## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**TONINO ACETO,**
        **Plaintiff,**

v.

**LINCOLN ELECTRIC COMPANY, et al.,**
        **Defendants.**

)
)
)
)
)
)
)
)
)
)

# 04 - 12740 DPW

Civil Action No.

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED___N⁄A
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.___M.P.
DATE___12/30/04

MAGISTRATE JUDGE___MBB

## NOTICE OF REMOVAL

Defendants, The Lincoln Electric Co., Hobart Brothers, Co., The ESAB Group, Inc.,

Airgas-Gulf States, Inc., A.O. Smith Corporation, The BOC Group, Inc., f/k/a Airco, Inc.,

Eutectic Corporation, Praxair, Inc., Sandvik, Inc., TDY Industries, Inc., Union Carbide

Corporation, Union Carbide Corporation f/k/a Union Carbide Chemicals and Plastics Company,

Inc., Viacom, Inc. and Viacom, Inc. as successor by merger to CBS Corporation f/k/a

Westinghouse Electric Corporation ("Defendants"), hereby provide notice that they are removing

this action from the Middlesex Superior Court, Cambridge, Massachusetts, in which court the

cause is currently pending, to the United States District Court for the District of Massachusetts.

In support thereof, Defendants state the following:

1.  Defendants exercise their rights under the provision of 28 U.S.C. § 1441, *et seq.*, to

remove this case from the Middlesex Superior Court, Cambridge, Massachusetts. The case is

now pending under the name and style of *Tonino Aceto v. Lincoln Electric Co., Hobart Brothers,*

*Co., Illinois Tool Works, The ESAB Group, Inc., et al.*, Civil Action No. 04-4434.

2.  U.S.C. Section 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil
> action brought in a State Court of which the District Courts of the United

States have original jurisdiction, may be removed by the defendant or defendants, to a District Court of the United States for the District and Division embracing the place where such action is pending.

3. This is a civil class action that was instituted in the Middlesex Superior Court, Cambridge, Massachusetts, and has not been tried. Plaintiff, Tonino Aceto ("Plaintiff"), filed its Class Action Complaint on or about November 5, 2004. A true and correct copy of the Complaint is attached hereto as Exhibit A.

4. The Complaint was served on the defendant, The ESAB Group, Inc., on December 13, 2004. Defendants, The Lincoln Electric Company, Hobart Brothers Company and TDY Industries, Inc., were served on December 16, 2004. True and correct copies of the Summonses of The ESAB Group, Inc. and Hobart Brothers Company are attached hereto as Exhibit B. Defendants The BOC Group, Inc., f/k/a Airco, Inc., Praxair, Inc., Viacom Inc., Viacom. Inc. as successor by merger to CBS Corporation f/k/a Westinghouse Electric Corp., Union Carbide Corporation, Union Carbide Corporation f/k/a Union Carbide Chemicals and Plastics Company, Inc., Eutectic Corporation, A.O. Smith Corporation, Sandvik, Inc., and Airgas-Gulf States, Inc., have not been served to date. All other documents filed with the Middlesex Superior Court in this action are attached hereto at Exhibit C.

5. The District Court of the United States has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy as set forth in the Complaint exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Diversity Jurisdiction**

6. In determining whether complete diversity exists, the Court considers the citizenship of all properly joined parties. 28 U.S.C. § 1441(b). The Complaint identifies the named plaintiff as

a resident of the Commonwealth of Massachusetts. Compl. ¶ 1. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Plaintiff is a citizen of the Commonwealth of Massachusetts.

7. Defendant The Lincoln Electric Company is a corporation organized under the laws of the State of Ohio and its principal place of business is in the State of Ohio. For purposes of diversity of citizenship under 28 U.S.C. § 1332, The Lincoln Electric Company is not a citizen of the Commonwealth of Massachusetts.

8. Defendant Hobart Brothers Company is a corporation organized under the laws of the State of Ohio and its principal place of business is in the State of Ohio. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Hobart Brothers Company is not a citizen of the Commonwealth of Massachusetts.

9. Defendant Illinois Tool Works is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Illinois. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Illinois Tool Works is not a citizen of the Commonwealth of Massachusetts.

10. Defendant The ESAB Group, Inc., is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of South Carolina. For purposes of diversity of citizenship under 28 U.S.C. § 1332, The ESAB Group, Inc., is not a citizen of the Commonwealth of Massachusetts.

11. Defendant Airgas-Gulf States, Inc., is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Alabama. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Airgas-Gulf States, Inc., is not a citizen of the Commonwealth of Massachusetts.

12. Defendant A.O. Smith Corporation is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Wisconsin. For purposes of diversity of citizenship under 28 U.S.C. § 1332, A.O. Smith Corporation is not a citizen of the Commonwealth of Massachusetts.

13. Defendant The BOC Group, Inc., f/k/a Airco, Inc., is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of New Jersey. For purposes of diversity of citizenship under 28 U.S.C. § 1332, The BOC Group, Inc., f/k/a Airco, Inc., is not a citizen of the Commonwealth of Massachusetts.

14. Defendant Eutectic Corporation is a corporation organized under the laws of the State of New York and its principal place of business is in the State of New York. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Eutectic Corporation is not a citizen of the Commonwealth of Massachusetts.

15. Defendant Praxair, Inc., is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Connecticut. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Praxair, Inc., is not a citizen of the Commonwealth of Massachusetts.

16. Defendant Sandvik, Inc., is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of New Jersey. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Sandvik, Inc., is not a citizen of the Commonwealth of Massachusetts.

17. Defendant TDY Industries, Inc., is a corporation organized under the laws of the State of California and its principal place of business is in the State of California. For purposes of

diversity of citizenship under 28 U.S.C. § 1332, TDY Industries, Inc., is not a citizen of the Commonwealth of Massachusetts.

18. Defendant Union Carbide Corporation is a corporation organized under the laws of the State of New York and its principal place of business is in the State of Texas. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Union Carbide Corporation is not a citizen of the Commonwealth of Massachusetts.

19. Defendant Union Carbide Corporation f/k/a Union Carbide Chemicals and Plastics Company, Inc., is a corporation organized under the laws of the State of New York and its principal place of business is in the State of Texas. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Union Carbide Corporation f/k/a Union Carbide Chemicals and Plastics Company, Inc., is not a citizen of the Commonwealth of Massachusetts.

20. Defendant Viacom, Inc., is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of New York. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Viacom, Inc., is not a citizen of the Commonwealth of Massachusetts.

21. Defendant Viacom, Inc. as successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of New York. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Viacom, Inc. as successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation is not a citizen of the Commonwealth of Massachusetts.

22. Defendant Miller Electric Manufacturing Company, Incorporated, is a corporation organized under the laws of the State of Wisconsin and its principal place of business is in the State of Wisconsin. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Miller

Electric Manufacturing Company, Incorporated, is not a citizen of the Commonwealth of Massachusetts.

23. Defendant J.W. Harris Company, Incorporated, is a corporation organized under the laws of the State of Ohio and its principal place of business is in the State of Ohio. For purposes of diversity of citizenship under 28 U.S.C. § 1332, J.W. Harris Company, Incorporated, is not a citizen of the Commonwealth of Massachusetts.

24. Defendant Industrial Welding Supplies of Hattiesburg, Incorporated is a corporation organized under the laws of the State of Mississippi and its principal place of business is in the State of Mississippi. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Industrial Welding Supplies of Hattiesburg, Incorporated, is not a citizen of the Commonwealth of Massachusetts.

25. Defendant Deloro Stellite Company, Incorporated, is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Missouri. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Deloro Stellite Company, Incorporated, is not a citizen of the Commonwealth of Massachusetts.

26. Defendant General Electric Company is a corporation organized under the laws of the State of New York and its principal place of business is in the State of Connecticut. For purposes of diversity of citizenship under 28 U.S.C. § 1332, General Electric Company is not a citizen of the Commonwealth of Massachusetts.

27. Defendant Caterpillar, Incorporated, is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Illinois. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Caterpillar, Incorporated, is not a citizen of the Commonwealth of Massachusetts.

28. Defendant The National Electric Manufacturers Association is a corporation organized under the laws of the State of Delaware and its principal place of business is in the State of Virginia. For purposes of diversity of citizenship under 28 U.S.C. § 1332, The National Electric Manufacturers Association is not a citizen of the Commonwealth of Massachusetts.

29. Defendant Select-Arc, Incorporated, is a corporation organized under the laws of the State of Ohio and its principal place of business is in the State of Ohio. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Select-Arc, Incorporated, is not a citizen of the Commonwealth of Massachusetts.

30. There is complete diversity of citizenship for purposes of federal jurisdiction under 28 U.S.C. § 1332 because only Plaintiff, and none of Defendants, is a citizen of the Commonwealth of Massachusetts.

31. The amount in controversy requirement of 28 U.S.C. § 1332 is satisfied in that the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs. *See* Civil Action Cover Sheet, Exhibit A.

32. Plaintiff in this action alleges that he and the class of individuals that he seeks to represent were exposed "to welding fumes containing the air borne metal/chemical/substance manganese." Compl. ¶ 27. According to Plaintiff, "manganese has been medically recognized as toxic to the human central nervous system in levels that exceed the trace amounts normally found in the human body." *Id.* ¶ 31. In connection with this exposure, Plaintiff alleges that Defendants knew or should have known of the health hazards associated with manganese and took steps to intentionally conceal these hazards from the general public. *Id.* ¶¶ 43-44, 49-52.

33. This suit is one of numerous suits filed over the last year involving similar allegations. A multidistrict litigation proceeding (MDL. No. 1535) has been established before The Honorable

Kathleen O'Malley in the U.S. Court for the Northern District of Ohio to resolve a large number of these claims.

34. In this action, Plaintiff's Complaint includes claims for negligence, strict liability, breach of express warranty, breach of implied warranty, failure to warn, common law fraud, and defective design. *See* Compl. ¶¶ 96-179.

35. In support of these claims, plaintiff alleges the defendants "knew or should have known of the health hazards inherent in the products they were selling, distributing, or using." Compl. ¶ 42. Plaintiff further alleges that the defendants "concealed and/or ignored that information, and/or condoned the concealment, and/or advised, encouraged, or aided others and/or each other to do so, in order to sell their products and/or avoid the costs of safety precautions, and/or avoid litigation by people injured by welding fumes." *Id.* ¶ 43.

36. As a result, plaintiff alleges, he and each member of the putative class "have suffered related permanent neurological and physical damage, severe physical and mental pain, loss of wages, loss of earning capacity, disability, medical expenses, and loss of enjoyment of life in varying degrees." Compl. ¶ 38. Plaintiff also alleges that he and the proposed class members "have sustained, and will sustain, welding fume-related injuries, conditions, and damages, including past and future pain and suffering; past and future medical treatment and medical expenses; past and future rehabilitation, life care expenses, and medical monitoring; past lost wages and future disability; past and future impairment of earning capacity; a diminution in [the] quality and enjoyment of life; and emotional distress." *Id.* ¶ 127.

37. Plaintiff further alleges that "[a]s a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs and the class have incurred, and will continue to incur, expenses for: medical testing; health monitoring; biomedical care; behavioral, cognitive, linguistic and social

8

therapies; diet modification; special educational programs; vocational training; and in severe cases, life-long institutional care or assisted living." Compl. ¶ 143.

38. In addition to compensatory damages and medical monitoring based on these allegations, plaintiff also seeks punitive damages, attorneys' fees, and expenses. Compl. ¶¶ 96-126, 134-179.

39. Plaintiff's claims meet the jurisdictional threshold on several different grounds.

40. First, it is well established that the amount-in-controversy requirement is easily satisfied in cases alleging personal injury. *See, e.g., In re Rezulin Products Liability Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (amount-in-controversy requirement satisfied in case alleging personal injury where "[t]he complaint . . . does not preclude recovery in excess of $75,000"); *Cygielman v. Cunard Line Ltd.*, 890 F. Supp. 305, 306-07 (S.D.N.Y. 1995) (in personal injury action, finding amount in controversy requirement satisfied where it did not appear to legal certainty that claim was for less than jurisdictional amount).

41. Second, even if some of the proposed class members purport to assert claims for less than $75,000, this Court has jurisdiction over the remainder of the proposed class members' claims pursuant to 28 U.S.C. § 1367. There is conflicting authority in the First Circuit as to whether 28 U.S.C. § 1367 authorizes federal courts to exercise supplemental jurisdiction over the claims of absent class members. *See Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 132 n.6 (1st Cir. 2004) (noting the split authority in the First Circuit while expressing no opinion "regarding the application of § 1367 in class actions"). However, the majority of other circuits have found that supplemental jurisdiction is applicable to class actions, and the Supreme Court has granted certiorari on this issue. *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1254 (11th Cir. 2003), *cert. granted*, 160 L. Ed. 2d 221, 125 S. Ct. 317 (2004).

9

42. Third, Plaintiff seeks the establishment of a medical monitoring program, which Plaintiff alleges is necessary because Plaintiff and those similarly situated "live in an ever-present fear that as a result of the exposure they will suffer adverse health consequences and/or disabling or terminal diseases in the future." Compl. ¶ 128. Specifically, Plaintiff requests that the removing Defendants fund a medical monitoring program that would include "preventative screening, neurological and other testing, neurologists' and other physicians' evaluations, examinations and care and treatment of the resultant medical conditions." *Id.* ¶ 130.

43. As numerous federal courts have found in similar cases, a request for the creation of a medical monitoring fund satisfies the amount-in-controversy requirement because there are fixed costs to establishing such a fund – regardless of the number of class members. *See, e.g., In re Diet Drugs*, No. Civ. A. 98-20626, 1999 WL 673066, at *5 (E.D. Pa. Aug. 26, 1999) (holding that the value of a medical monitoring fund should be measured by the cost to the defendant); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2003 WL 22038708, at *3-*7 (D. Minn. Feb. 25, 2003) (holding that request for a medical monitoring fund met amount-in-controversy requirement); *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *5 (W.D. Tenn. Apr. 3, 2001) (same); *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 152-53 (S.D.N.Y. 2001) (same).

44. In an apparent effort to evade federal jurisdiction, Plaintiff alleges that "[t]he claim of some of the plaintiffs herein is equal to $75,000.00 (Seventy Five Thousand Dollars) and the claim of some of the plaintiffs herein exceeds $75,000.00 (Seventy-Five Thousand Dollars)." Compl. ¶ 132. At the same time, Plaintiff "demands judgment in an amount deemed just and reasonable" as well as "whatever further relief this Honorable Court deems appropriate." *See, e.g., id.* ¶¶ 106, 117, 126, 136, 152, 162. Even assuming that Section 1367 did not give this

Court supplemental jurisdiction over claims below $75,000, Plaintiff's equivocal declaration that some plaintiffs' claims are equal to $75,000 while others exceed $75,000 – all the while attempting to preserve their right to seek further damages and relief – suggests that Plaintiff is half-heartedly limiting damages for purposes of jurisdiction, but leaving enough wiggle room to seek more relief after jurisdiction is decided. This equivocal limitation on damages does not deprive the Court of jurisdiction. *See In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (statement in complaint that plaintiff was not seeking recovery in excess of jurisdictional limit could not defeat removal of personal injury action).

45. Moreover, Plaintiff's attempt to limit damages to $75,000 is placed in the section of the Complaint that seeks medical monitoring – not in the prayer for relief. Compl. ¶ 132. As such, the purported limitation on damages must be read as limiting only those damages related to the medical monitoring program. Thus, Plaintiff's purported limitation, if effective at all, would only operate as a limitation on damages related to the medical monitoring program. The other forms of relief sought, including punitive damages and attorneys' fees, would be unlimited. *Id.* ¶¶ 96-126, 133-179.

46. In any event, Plaintiff's attempt to limit damages with respect to any medical monitoring program is also irrelevant and ineffective. As noted above, the cost of a medical monitoring program is properly determined with respect to the start-up costs that would be incurred by the defendants, not the value to individual plaintiffs. *In re Diet Drugs*, No. Civ. A. 98-20626, 1999 WL 673066, at *5 (E.D. Pa. Aug. 26, 1999) (holding that the value of a medical monitoring fund should be measured by the cost to the defendant). Thus, any attempt by Plaintiff to limit damages with respect to a medical monitoring program on a per-plaintiff basis is wholly ineffective.

**Procedural Compliance**

47. In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after the receipt by the removing Defendants, of copies of the Summons and the initial pleadings setting forth the claim for relief upon which this removal is based.

48. Pursuant to 28 U.S.C. § 1441, *et seq.*, the right exists to remove this case from Middlesex Superior Court, Cambridge, Massachusetts, which embraces the place where the action is pending, to the United States District Court for the District of Massachusetts.

49. Pursuant to the provisions of 28 U.S.C. § 1446(a), attached hereto are copies of the Complaint bearing case number 04-4434, filed in the Middlesex Superior Court, Cambridge, Massachusetts (attached hereto as Exhibit A) and the Summonses issued in this case to the removing Defendants (attached hereto as Exhibit B).

50. All properly served defendants in this case consent to this removal and will separately file affirmation of their consent within thirty days of service.

51. Written notice of the filing of this Notice of Removal will be served upon counsel for Plaintiff as required by law.

52. A true and correct copy of this Notice of Removal will be filed with the clerk of the Middlesex Superior Court, Cambridge, Massachusetts, as required by law, and served upon counsel for Plaintiff.

53. WHEREFORE, the undersigned defendants respectfully remove this action from the Middlesex Superior Court pursuant to 28 U.S.C. §§ 1441 and 1332, and give notice that the Middlesex Superior Court shall proceed no further pursuant to 28 U.S.C. § 1446(d).

Dated: December 30, 2004

Respectfully submitted,

By Its Attorneys,

*Wm. Shaw McDermott*

Wm. Shaw McDermott (BBO #330860)
Gregory R. Youman (BBO #648721)
Ashley Kline Handwerk (BBO# Pending)
Kirkpatrick & Lockhart LLP
75 State Street
Boston, MA 02109
(617) 261-3100

COUNSEL FOR DEFENDANTS AIRGAS-GULF STATES, INC., A.O. SMITH CORPORATION, THE BOC GROUP, INC., F/K/A AIRCO, INC., THE ESAB GROUP, INC., EUTECTIC CORPORATION, HOBART BROTHERS COMPANY, THE LINCOLN ELECTRIC COMPANY, PRAXAIR, INC., SANDVIK, INC., TDY INDUSTRIES, INC., UNION CARBIDE CORPORATION, UNION CARBIDE CORPORATION F/K/A UNION CARBIDE CHEMICALS AND PLASTICS COMPANY, INC., VIACOM, INC. AND VIACOM, INC. AS SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORP.

13

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2004, I served a true and accurate copy of the Notice of Removal, Civil Cover Sheet, Civil Category Sheet, Defendants' Answer and Defendant's Motion to Stay by first-class mail, postage prepaid, upon the following:

Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155
Attorney for Plaintiff

Alan W. Brothers, Esq.
Brothers & Thompson, P.C.
100 West Monroe Street, Suite 1700
Chicago, IL 60603
Attorney for Defendants Illinois Tool Works, Inc.
        and Miller Electric Manufacturing, Co.

Brian P. Voke, Esq.
Anthony Sbarra, Esq.
Campbell, Campbell, Edwards & Conroy, P.C.
One Constitution Center, Third Floor
Boston, MA 02129
Attorney for Defendant Select-Arc, Inc.

Michael B. DeSanctis, Esq.
David A. Handzo, Esq.
Jenner & Block
601 Thirteenth Street, NW
12th Floor
Washington, DC 20005
Attorney for Defendant the National Electric Manufacturers Association

Katharine Latimer, Esq.
Bonnie J. Semilof, Esq.
Rebecca A. Womeldorf, Esq.
Spriggs & Hollingsworth
1350 I Street, NW, Suite 900
Washington, DC 20005
Attorney for Defendant General Electric Co.

14

Daniel Bukovac, Esq.
Leonard J. Johnson, Esq.
Stinson Morrison Hecker LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Attorney for Defendant Deloro Stellite Co., Inc.

Richard P. Campbell, Esq.
Kurt B. Gerstner, Esq.
Campbell, Campbell, Edwards & Conroy, P.C.
One Constitution Center, Third Floor
Boston, MA 02129
Attorney for Defendant Caterpillar, Inc.

John J. Haggerty, Esq.
Ulmer & Berne, LLP
1300 East Ninth Street, Suite 900
Cleveland, OH 44114
Attorney for J.W. Harris, Co., Inc.

David M. Ott, Esq.
Bryan Nelson Randolph
6524 U.S. Highway 98
P.O. Drawer 18109
Hattiesburg, MS 39404-8109
Attorney for Defendant Industrial Welding Supplies of Hattiesburg, Inc.

Todd R. Eskelsen, Esq.
Sonnenschein, Nath & Rosenthal
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005
Attorney for Defendant Ferroalloys Association

_Wm. Shaw McDermott_
Wm. Shaw McDermott

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: | Docket Number 04-1434 |
|---|---|---|

PLAINTIFF(S) *Tonno Aceto*

DEFENDANT(S) *Lincoln Electric Company*

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
*Robert Bonsignor  23 Forest St  Medford*
*MA  02155*
Board of Bar Overseers number: *547 880*

ATTORNEY (if known)

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| *B05* | *Product Liability* | *(A)* | (X) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
### (Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................ $ *500,000*
2. Total Doctor expenses ............................................ $ *100,000*
3. Total chiropractic expenses ...................................... $ ..........
4. Total physical therapy expenses ................................. $ ..........
5. Total other expenses (describe) *Nursing care, Assisted Car Facility, Home Care* $ *200,000*

*NOV 05 2004*

Subtotal $ ..........

B. Documented lost wages and compensation to date ........................ $ ..........
C. Documented property damages to date ................................... $ ..........
D. Reasonably anticipated future medical and hospital expenses ........... $ *250,000*
E. Reasonably anticipated lost wages .................................... $ ..........
F. Other documented items of damages (describe)

$ *1.1M*

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
*Poisoned by welding fumes. Developed Parkinsons like symptoms. Can no longer walk. Has shakes*

TOTAL: $ ..........

## CONTRACT CLAIMS
### (Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL    $ ..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____    DATE: *11/5/07*

A.O.S.C. 2003

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, SS**

**CIVIL ACTION NO.**



TONINO ACETO : 04-4434

v. :

LINCOLN ELECTRIC COMPANY, HOBART : 
BROTHERS COMPANY, ILLINOIS TOOL : 
WORKS, THE ESAB GROUP, INC. et al :

FILED
OFFICE OF THE
COURTS
NOV 05 2004
CLERK

1896E000011/05/04CIVIL       240.
1896E000011/05/04SUR CHARGE   15.
1896E000011/05/04SECC         00
1896E000011/05/04SUMMONS      250

### CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all others similarly situated, by their undersigned attorneys, allege upon information and belief, the following:

### PARTIES

1.     TONINO ACETO, is an adult citizen and a resident 45 Lincoln Street, Malden, MA 02148, in the County of Middlesex (North), State of Massachusetts.

2.     Defendant Lincoln Electric Company ("Lincoln"), is a corporation incorporated under the laws of Ohio that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

3.     Defendant Hobart Brothers Company ("Hobart"), is a corporation incorporated under the laws of Ohio that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

4.     Defendant Illinois Tool Works, Inc. ("Illinois Tool Works"), is a corporation incorporated under the laws of Delaware that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

5.     Defendant The ESAB Group, Inc. ("ESAB"), is a corporation incorporated under the laws of Ohio that has done and is doing business in Massachusetts but is not qualified to do business in Massachusetts, with The Corporation Trust Company, The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, as its agent for service of process.

6.     Defendant Select-Arc, Inc. ("Select-ARC"), is a corporation incorporated under the laws of Ohio that has done and is doing business in Massachusetts but is not qualified to do business in Massachusetts, with Paul E. Zimmer, 2700 Ketting Tower, 40 N. Main St., Dayton, OH 45423, as its agent for service of process.

7.     Defendant The National Electric Manufacturers Association ("NEMA"), is a trade organization comprised of manufacturers that has a section devoted to the manufacturer of welding products known as "NEMA Electric Welding Section" or "NEMA Arc Welding Section" and located at 1300 N. 17th Street, Suite 1847, Rosslyn, VA 22209.

8.     Defendant The Ferroalloys Association ("TFA"), is an association and industry advocacy group that includes the producers of chromium, manganese, silicone, and vanadium ferroalloys that sponsored a manganese

2

subcommittee that includes representative from welding manufacturers, the AWS, and the NEMA. Their current address is Valenova.

9.      Defendant Airco, Inc., ("Airco"), now known as The BOC Group, Inc., is a corporation incorporated under the laws of Delaware that is qualified to do business in Massachusetts and doing business in Massachusetts, with C. T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

10.      Defendant Praxair, Inc. ("Praxair"), is a corporation incorporated under the laws of Delaware that is qualified to do business in Massachusetts and doing business in Massachusetts, with The Hall Corporation System, Inc, 285 Liberty Street NE, Boston, MA 02110,, as its agent for service of process.

11.      Defendant TDY Industries, Inc. ("Teledyne"), formerly known as Teledyne Industries, Inc., is a corporation incorporated under the laws of California that is qualified to do business in Massachusetts and doing business in Massachusetts, with C. T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

12.      Defendant Viacom, Inc. ("Viacom"), is a corporation incorporated under the laws of Delaware that is qualified to do business in Massachusetts and doing business in Massachusetts. Their current address is Valenova.

13.      Defendant Westinghouse Electric Corporation ("Westinghouse"), now known as CBS Corporation, is a corporation incorporated under the laws of Pennsylvania that is qualified to do business in Massachusetts and doing business

3

in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

14.     Defendant Caterpillar, Inc. ("Caterpillar"), is a corporation incorporated under the laws of Delaware that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

15.     Defendant General Electric Company ("General Electric"), is a corporation incorporated under the laws of New York that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

16.     Defendant Union Carbide Corporation ("Union Carbide"), is a corporation incorporated under the laws of New York that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

17.     Defendant Union Carbide Chemicals and Plastics Company, Inc. ("Union Carbide Chemicals"), now known as Union Carbide Corporation, is a corporation incorporated under the laws of New York that is qualified to do business in Massachusetts and doing business in Massachusetts, with C.T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

18.     Defendant Eutectic Corporation ("Eutectic"), is a corporation organized under the laws of New York that has done and is doing business in Massachusetts, but is not qualified to do business in Massachusetts, with Corporation Service Company, 327 Hillsborough Street, Raleigh, North Carolina 27603, as its agent for service of process and Mitchell Moser, Esq., Quarles & Brady, PLLC, 411 East Wisconsin Ave., Suite 2040, Milwaukee, WI 53202.

19.     Defendant A. O. Smith Corporation ("Smith"), is a corporation incorporated under the laws of New York that is qualified to do business in Massachusetts and doing business in Massachusetts, and its successor in interest St De Aosco, Inc., with Prentice-Hall Corporation System, The Prentice Hall Corporation System, Registered Agent, 285 Liberty Street NE, Boston, MA 02110, as its agent for service of process.

20.     Defendant Sandvik, Inc. ("Sandvik"), is a corporation incorporated under the laws of Delaware that has done and is doing business in Massachusetts, but is not qualified to do business in Massachusetts, with C. T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

21.     Defendant Deloro Stellite Company, Inc. ("Deloro"), is a corporation incorporated under the laws of Delaware that has done and is doing business in Massachusetts, but is not qualified to do business in Massachusetts, with C. T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

22.    Defendant Miller Electric Manufacturing Co., Inc. ("Miller Electric"), is a corporation incorporated under the laws of Wisconsin that has done and is doing business in Massachusetts, with C.T. Corporation System, 44 E. Mifflin St., Madison, WI 53703, as its agent for service of process.

23.    Defendant J. W. Harris Co., Inc. ("J. W. Harris"), is a corporation incorporated under the laws of Ohio that has done and is doing business in Massachusetts, with Stephen M. Nechemias, 425 Walnut St., No. 1800, Cincinnati, OH 45202, as its agent for service of process.

24.    Defendant Industrial Welding Supplies of Hattiesburg, Inc. ("Industrial Welding"), formerly known as Nordan Smith, is a corporation incorporated under the laws of Mississippi doing business in Massachusetts whose agent for service of process is C.T. Corporation System, 2 Oliver Street, Boston, MA 02109.

25.    Defendant Airgas-Gulf States, Inc. ("Airgas"), is a corporation incorporated under the laws of Delaware that is qualified to do business in Massachusetts and doing business in Massachusetts, with C. T. Corporation System, 2 Oliver Street, Boston, MA 02109, as its agent for service of process.

26.    Defendant John Doe Defendants A-Z, whose identities are unknown to the Plaintiffs at this time, but when those parties' true identities are discovered, the pleadings will be amended by substituting their true names and giving proper notice to these parties, pursuant to the L.C.C.P. These Defendants include sellers, suppliers, distributors, and manufacturers that, at any time relevant to these proceedings, supplied welding equipment, supplies, and steel/metal products

6

containing manganese to various suppliers in or about Boston, Massachusetts,

and also include unknown members of AWS, NEMA and TFA, whose negligence

and breaches caused or contributed to cause the Plaintiffs' damages and injuries.

## CLASS ALLEGATIONS

27.    This action is brought by Tonino Aceto, individually and on behalf of

those similarly situated who sustained direct and/or consequential affects, injury

and damage as a result of the exposure to welding fumes containing the air borne

metal/chemical/substance manganese.

28.    The plaintiff referenced above on his own behalf and as

representative of a class of Massachusetts plaintiffs defined as follows:

> All persons and their spouses who reside and/or work and/or worked in the
> Commonwealth of Massachusetts and are or were exposed to welding
> fumes containing the air borne metal/chemical/substance manganese, and
> who sustained direct and/or consequential personal injury, fear, fright, or
> other damage or compensable affect.

## FACTS

29.    Over the years, Tonino Aceto and persons similarly situated but as

yet unidentified, were exposed to toxic fumes resulting from welding while at work.

30.    The ordinary and intended use of welding products will cause

emissions of fumes that contain manganese ("welding fumes").

31.    Since 1837, manganese has been medically recognized as toxic to

the human central nervous system in levels that exceed the trace amounts

normally found in the human body.

32.     Toxicity of manganese causes progressive, disabling neurological damage referred to as manganese poisoning.

33.     People who suffer from manganese poisoning suffer from debilitating neurological problems that affect their ability to think, talk, eat, move, sleep, and work.

34.     Workers exposed to welding fumes are exposed to manganese primarily through inhalation. Manganese exposure for a period as short as 49 days can cause manganese poisoning and progressive, disabling, neurological damage.

35.     While working, Tonino Aceto and each member of the Putative Class was exposed to manganese rich welding fumes while using welding products and equipment or working in the proximity of other persons using welding products or equipment.

36.     Consequently, Plaintiffs and those similarly situated are entitled to medical monitoring at the expense of Defendants.

37.     As a direct and proximate result of exposure to the manganese rich welding fumes, Tonino Aceto and each member of the Putative Class represent they have developed symptoms indicative of the condition known as manganism and/or manganese poisoning and/or Parkinson-like Syndrome (closely resembling but different from Parkinson's Disease).

38.     As a direct and proximate result of exposure to manganese rich welding fumes, Tonino Aceto and each member of the Putative Class of American workers he represents have suffered related permanent neurological and physical

damage, severe physical and mental pain, loss of wages, loss of earning capacity, disability, medical expenses, and loss of enjoyment of life in varying degrees.

39. At all relevant times, Tonino Aceto and each member of the Putative Class they represent (hereinafter "Plaintiffs") were kept ignorant of the dangerous nature of welding fumes, manganese, and the neurological injuries that could occur because of exposure to manganese rich welding fumes.

40. Any reasonable person, including Tonino Aceto and each member of the Putative Class, if adequately informed of the hazards of exposure to welding fumes, would not have willingly exposed themselves to such welding fumes in workplaces without necessary precautionary measures.

41. All of the Defendants are or were manufacturers, sellers, suppliers or large industrial consumers of welding products.

42. Through industry and medical studies, unknown to Tonino Aceto and each member of the Putative Class, the Defendants knew or should have known of the health hazards inherent in the products they were selling, distributing, or using.

43. The Defendants concealed and/or ignored that information, and/or condoned the concealment, and/or advised, encouraged, or aided others and/or each other to do so, in order to sell their products and/or avoid the costs of safety precautions, and/or avoid litigation by people injured by welding fumes. The actions or inactions demonstrate a reckless disregard for the rights and safety of this class of blue collar working Americans.

44.    The Defendants committed numerous tortuous acts that included knowingly and/or negligently misrepresenting, concealing, suppressing, and omitting material information about the health effects of magnesia rich welding fumes and precautionary measures as specifically alleged below.

45.    NEMA is a trade organization comprised of manufacturers that has a section devoted to the manufacturers of welding products known as "NEMA Electric Welding Section" or "NEMA Arc Welding Section" ("NEMA Welding Section").

46.    TFA is an industry advocacy group consisting of producers of chromium, manganese, silicon, and vanadium ferroalloys that sponsored a manganese subcommittee that includes representatives from welding manufacturers and the AWS and NEMA. The TFA's membership included management representatives of companies that produce welding products and consumers that purchase large quantities of the products for use in their operations.

47.    The Defendants created committees within these trade organizations and then used the committees to negligently misrepresent, conceal, suppress, and omit material information about the health effects of welding fumes and necessary precautionary measures.

48.    Specific examples of the trade association committees controlled by Defendants and their activities are identified below.

49.    The Defendants controlled and used the committees to conceal the dangers from people exposed to welding fumes by:

A. limiting individual membership on relevant committees exclusively or primarily to employees of the Defendants or their designated representatives;

B. maintaining, through Defendants' delegates, majority or exclusive voting control of the committees at all times;

C. selecting the assignments or proposals considered by each committee;

D. funding projects chosen by Defendants;

E. using the Defendants' delegates to prepare the written records of the business transacted by each committee; and/or

F. reviewing and editing, to the satisfaction of the Defendants, studies performed by consultants hired by the committees.

50.     From at least 1937 to the present, the Defendants, by their actions and through trade association committees they controlled, undertook studies, issued product labels and other health and safety information, and issued specifications and standards for ventilation, safety equipment, and other precautionary measures.

51.     At all times, the Defendants acted to conceal the health hazards of welding fumes, and specifically manganese, knowing that their studies, publications, specifications, and standards would be adopted and relied upon by manufacturers, sellers, and consumers of large amounts of welding products as the authoritative source for warnings, instructions, and precautionary measures printed on product labels and otherwise distributed in the stream of commerce.

11

52.    The Defendants had actual knowledge about the causal relationship between manganese-containing welding fumes and neurological injury. The Defendants unfairly and deceptively concealed this information from workers exposed to welding fumes.

53.    The causal connection between neurological injuries and welding fumes containing manganese has been scientifically documented since 1932

54.    In 1932, a medical article was published documenting two cases of welders with neurological injury caused by manganese poisoning from welding fumes. The copy of this article or a summary of the medical article was received in the libraries of each Defendant.

55.    In 1937, NEMA's Welding Section received further notice of the contents of the 1932 medical article through a welding safety booklet published by an insurance company stating that manganese in welding fumes "causes a disease similar to *paralysis agitans* [Parkinson's disease]."

56.    In 1944, NEMA's Welding Section received notice of a claim of manganese poisoning in a welder.

57.    In 1958, the AWS-sponsored Z49 Committee issued a technical document, (not intended for use by welders) approved by the AWS Technical Committee, an oversight committee for AWS activities, reflecting its knowledge that manganese in welding fumes is a potentially toxic substance.

58.    In 1966, at a meeting of a task group of the AWS Filler Metal Committee, members of the committee reviewed an industrial hygiene article

identifying manganese as a toxic substance in welding fumes, and the Committee discussed neurological injuries in welders.

59.     In 1970, the AWS Task Group on Welding Fumes received notice, through a literature search submitted by a consultant hired by the Task Group on Welding Fumes, that welding fumes could cause neurological damage (magnesia) due to manganese poisoning, and that the symptoms of manganese poisoning resemble the symptoms of Parkinson's Disease.

60.     In 1970, the AWS Task Group on Welding Fumes received notice, through a welding fume study conducted by a consultant hired by the Task Group on Welding Fumes, that welding fumes could easily exceed the recommended occupational exposure guidelines, even when ventilation standards specified by Defendants were followed.

61.     Beginning in the late 1970s, the AWS Safety and Health Committee received notice of claims of welders suffering neurological injuries from manganese in welding fumes.

62.     In 1978, the AWS Safety and Health Committee received notice, through a literature search report submitted by a consultant hired by the Committee, that welders can suffer neurological damage from manganese in welding fumes. A portion of this report is quoted below:

> "Although a number of cases...have been reported, there are no recent studies reported in the literature which explore the magnitude of the problem of chronic manganese poisoning in welders. In future epidemiological studies of various welding populations, the prevalence of this disease should be investigated....

63. Early symptoms of chronic manganism include restlessness, irritability and a tendency to laugh or cry without purpose. These symptoms may be followed by apathy, visual hallucinations, uncontrollable impulse, and flight of ideas, mental confusion or euphoria.

64. Mask-like facial expression, spastic grin, muscle rigidity, slow gait with sliding of the feet, increased and abnormal reflexes, monotonous blurred speech with poor articulation, tremors, irregular handwriting, impaired hearing, double vision, abnormal reactions to pain, touch, heat and pressure, excessive salivation and perspiration, sexual impotence and diminution of libido have been described by various authors.... Mental activity is reported to be slowed, judgment impaired and memory weakened, but intelligence remains normal.

65. The observation that manganism resembles Parkinson's Disease deserves emphasis. Although no data on the prevalence of Parkinsonism in welders are available, there is a concern that some cases of manganese poisoning could be mistakenly diagnosed as Parkinson's Disease. Further investigations may be warranted.

66. Manganism, like Parkinsonism, responds favorably to treatment with the drug levodopa (L-dopa), indicating that the two diseases may share certain biological abnormalities: depletion of dopamine (a neurotransmitter in the basal ganglia of the brain) and depletion of melanin pigment content of the nerve cells of the substantial nigra, also in the brain."

67.    In 1978, the same consultant described above reported to the AWS Safety and Health Committee that manganese poisoning from welding fumes could be misdiagnosed as idiopathic Parkinson's Disease, and that the problem was so widespread that it required an epidemiological study

68.    In 1979, the AWS Research Committee and the AWS Executive Committee on Safety and Health concluded that there was sufficient evidence to justify the funding of an epidemiological study that would include the study of neurological problems in welders. The committee voted to undertake this epidemiological study, although it was never completed.

69.    In 1983, the AWS Safety and Health Committee received notice through an independent literature search that manganese poisoning is "readily confused with Parkinson's Disease," and also that in a study in India, 40% of the welders studied suffered "neurological injury."

70.    Beginning in the late 1970s and early 1980s, the Defendants through the AWS Safety and Health Committee and NEMA Welding Section sponsored "Industry Defense Committee," receiving notice of claims of manganese poisoning filed as lawsuits against companies in the welding industry.

71.    In 1984, the chairperson of the AWS Safety and Health Committee admitted "manganese fumes can cause a disease quite similar to Parkinson's Disease after six months to two years of exposure." The Defendants were aware of this admission.

72.    Beginning in 1985 and continuing to the present, Defendants admitted in their Material Safety Data Sheets ("MSDS"), which are technical

documents of limited distribution, their knowledge that manganese in welding fumes could cause neurological damage.

73.     Because not all Defendants attended each meeting, it was a regular practice of the trade association committees to publish written minutes that were disseminated to all committee members including those not in attendance, for the purpose of ratifying and adopting the actions taken and decisions made at the meetings.

74.     At a meeting of NEMA's Welding Section held on March 16, 1937, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal known hazards associated with welding fumes by forming a "Dust and Smoke Committee" to preempt investigation of welding fume hazards by independent sources that were not controlled by the Defendants.

75.     During meetings of NEMA's Welding Section held between January 20 and June 23, 1938, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal known hazards of welding fumes by changing the language of a publication issued by an insurance company to delete the original statement in the publication that manganese in welding fumes causes a disabling illness similar to Parkinson's Disease.

76.     In 1939-40, at meetings of NEMA's Welding Section, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal the hazards of welding fumes by purporting to undertake an investigation of the health hazards of welding fumes and then, upon its completion, changing the

conclusions of the study, so as to falsely represent that welding fumes were not harmful to welders.

77.    In 1949, as part of a scheme to create and disseminate false evidence useful in defending against claims brought by persons injured by exposure to welding fumes, Defendant members of NEMA's Arc Welding Section agreed to and did intentionally, knowingly, and recklessly conceal known hazards of welding fumes by providing information for and causing publication in a welding trade journal of a two-part article that made the misrepresentation that welding fumes were not toxic.

78.    In 1949 and 1951, at meetings of NEMA's Arc Welding Section which considered precautionary measures, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by rejecting the adoption of any precautionary product labels for welding products because the Defendants feared that welders would be afraid to use welding products if they saw precautionary product labels, and therefore sales of welding products would be reduced.

79.    In 1952, the Defendants reorganized the AWS Safety Recommendations Committee and called a meeting to consider the furnishing of safety and health information at which they agreed to, and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by rejecting the adoption of any precautionary product labels for welding products.

80.    In 1952, at a meeting of the AWS Safety Recommendations Committee, the Defendants in attendance agreed to, and did intentionally,

17

knowingly, and recklessly adopt a policy of refuting existing reports of welding fume hazards by publishing their own reports that misrepresented exposure to welding fumes as safe.

81.    In 1957, the Defendants agreed to, and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by sponsoring the publication of an article in the *Welding Engineer* trade publication that made the misrepresentation that "toxic gases are not produced by electrode coatings."

82.    In 1966, at meetings of the AWS A5 Filler Metal Committee and a task group, the Defendants in attendance intentionally, knowingly, and recklessly agreed to publication in a trade journal of an article misrepresenting the health hazards of welding fumes as causing only "temporary disability."

83.    In 1966, at meetings of the A5 Filler Metal Committee of the AWS and a Task Group of that committee, the Defendants in attendance agreed to, and did intentionally, knowingly, and recklessly conceal health hazards of welding fumes by establishing industry-wide specifications for precautionary product labels that failed to warn workers of the danger of manganese in welding fumes. This precautionary label stated:

> Welding may produce fumes and gases hazardous to health. Avoid breathing these fumes and gases. Use adequate ventilation. See USAS Z49.1 "Safety in Welding & Cutting," published by the American Welding Society.

84.    In 1966, at meetings of the A5 Filler Metal Committee of the AWS and a Task Group of that committee, the Defendants in attendance established industry-wide specifications for precautionary product labels which did

18

intentionally, knowingly, and recklessly omit instructions about necessary ventilation, precautionary measures, and other information, needed to protect workers against the toxic effect of manganese.

85.    In 1966-67, through votes on a ballot distributed to the Defendants through the A5 Filler Metal Committee of the AWS, the Defendants did intentionally, knowingly, and recklessly approve, as part of the AWS required specifications for most welding products, a precautionary product label concealing health hazards from welding fumes and omitting instructions about necessary ventilation, precautionary measures, and other information.

86.    From 1975-79, the Defendants. through the AWS Committee on Safety and Health, did intentionally, knowingly. and recklessly conceal the known hazards of welding fumes by providing information that misrepresented the hazards associated with welding fumes as part of a deliberate scheme to prevent an independent standard-setting organization from lowering the occupational exposure guidelines for iron oxide and general welding fumes.

87.    In 1979, at meetings of a joint AWS-NEMA committee consisting of a special Task Group of the A5 Filler Metal Committee of the AWS and the Labeling and Safe Practices Committee of NEMA's Arc Welding Section, Defendants intentionally, knowingly, and recklessly established industry-wide specifications for precautionary product labels that concealed the health hazards of welding fumes by omitting any reference to the toxic effects of manganese in welding fumes.

88.    In 1979, at meetings of a joint AWS-NEMA committee consisting of a special Task Group of the A5 Filler Metal Committee of the AWS and the Labeling

and Safe Practices Committee of NEMA, the Defendants did intentionally, knowingly, and recklessly establish industry specifications for precautionary measures and other information needed by workers to protect against the toxic effects of manganese in welding fumes.

89.    In 1979, through votes on a ballot distributed to the Defendants through the AWS-NEMA Joint Committee On Precautionary Labels and the A5 Filler Metal Committee of the AWS, the Defendants did intentionally  knowingly and recklessly approve as part of the required industry-wide specifications for most welding products a precautionary product label concealing health hazards and omitting instructions about necessary ventilation, precautionary measures and other information. This precautionary label stated in pertinent part

"WARNING: Protect yourself and others. Read and understand this label.

FUMES AND GASES can be dangerous to your health.

Read and understand the manufacturer's instructions and your employer's safety practices.

Keep your head out of the fumes.

Use enough ventilation, exhaust at the arc, or both, to keep the fumes and gases from your breathing zone, and the general area.

See American National Standard Z49.1 "Safety in Welding and Cutting" published by the American Welding Society."

90.    Beginning in 1979 and continuing until the present time, at meetings
of the AWS Technical Council and Board of Directors, the Defendants in
attendance did intentionally, knowingly, and recklessly conceal the health hazards
of welding fumes by failing and refusing to perform an epidemiological study,
recommended by other AWS committees and an independent consultant retained
by the Defendants, to investigate the neurological effects of welding fumes on
persons exposed to welding fumes.

91    In 1980, at meetings of NEMA's Ad Hoc Committee on Precautionary
Labeling, the Defendants in attendance did intentionally, knowingly, and recklessly
conceal health hazards of welding fumes by approving industry specifications for
precautionary product labels for welding power sources that omitted reference to
the toxic effects of manganese in welding fumes on persons exposed to welding
fumes.

92.    Beginning in 1980, at meetings of the NEMA Ad Hoc Committee on
Precautionary Labeling, the Defendants in attendance did intentionally, knowingly,
and recklessly approve industry specifications for precautionary product labels for
welding power sources that omitted necessary instructions about ventilation,
precautionary measures, and other information needed to protect against the toxic
effects of manganese in welding fumes.

93.    Beginning in 1980 and continuing until 1996, at meetings of the
NEMA MSDS Task Force Committee and the AWS SH-4 Ad Hoc Committee on
Suggestions and Changes to NEMA Publication EW 5-1982, the Defendants in
attendance did intentionally, knowingly, and recklessly agree to conceal health

21

hazards of welding fumes by adopting a recommended format for the Hazardous Material and Health Hazard Data sections of the Material Safety Data Sheets (MSDS) for welding products that omitted reference to the manganese content of welding fumes, the neurological damage caused by manganese in welding fumes, and necessary instructions for protection against the health hazards of welding fumes.

94.    Beginning in 1993 and continuing to the present time, the Defendants, through the AWS Safety and Health Committee and NEMA Welding Section, did intentionally, knowingly, and recklessly seek to conceal the health hazards of manganese in welding fumes by appointing designated representatives to become committee members of, and providing funding for, a trade organization called The Ferroalloys Association ("TFA"), which opposes restrictions on the guidelines for manganese exposure levels established by various authorities.

95.    In 1993-95, the Defendants, through the above described organization sponsored by the AWS Safety and Health Committee and NEMA Welding Section, as part of a scheme to prevent the lowering of occupational exposure guidelines for manganese in welding fumes established by the American Conference of Governmental Industrial Hygienists ("ACGIH"), did intentionally, knowingly, and recklessly seek to conceal the health hazards of manganese in welding fumes by providing false and misleading information that exposure to manganese in welding fumes did not cause neurological injury.

## FIRST CLAIM FOR RELIEF
### ( Negligence)

96.    Plaintiff and the putative class realleges paragraphs 1-95 as if fully set forth herein.

97.    At all relevant times, it was reasonably foreseeable by the Defendants that welders including the Plaintiff, and persons in proximity to welding fumes, including those similarly situated, would be exposed to welding fumes containing manganese by using welding products or working in proximity of other workers using welding products.

98.    The Defendants assumed a duty to exercise reasonable care for the safety of the Plaintiffs and those they represent in putting their product into the street of commerce with internal labeling and warning.

99.    Because exposure to welding fumes presents a risk of physical harm, all Defendants had a legal duty to exercise reasonable care for the safety of the Plaintiffs and those similarly situated that they represent when making representations about welding safety and health in warning labels, publications, and instructions for ventilation and other precautionary measures.

100.    The Defendants knew, or in the exercise of ordinary care should have known, that persons exposed to welding fumes would act in reliance upon representations made by the Defendants about the health hazards associated with welding fumes and the precautionary measures required to protect against those health hazards.

101.    The Defendants knew, or in the exercise of ordinary care should have known, that welding fumes would cause neurological damage to workers like Plaintiffs and those similarly situated but as yet unidentified.

102.    The Defendants breached their duty of reasonable care and were negligent.

103.    Beginning in 1970, the Defendants violated OSHA standards about publication of information about health hazards through MSDS guidelines that omitted necessary instructions about target organs, ventilation, precautionary measures, and other information needed to protect against the toxic effects of manganese in welding fumes.

104.    The Defendants violated industry standards about health and safety as set forth in the Z49 documents adopted by the AWS sponsored Z49.1 committee beginning in 1950 by failing to publish adequate warning of precautionary instructions and other information to welders or persons in the proximity of welding fumes about the standard.

105.    As a direct and proximate result of the Defendants' negligent acts and omissions, Plaintiff Tonino Aceto and those similarly situated suffered, and continue to suffer, severe neurological injuries which will require medical monitoring of the Plaintiffs.  Plaintiffs' spouse and the similarly situated class members suffered damages for loss of consortium.

106.    WHEREFORE, the Plaintiff demands judgment in an amount deemed just and reasonable plus interest and costs against the Defendants.

## SECOND CLAIM FOR RELIEF
### (Negligence – Sale of Product)

107.    Plaintiff and the putative class realleges paragraphs 1-106 as if fully set forth herein..

108.    Lincoln, ESAB, Select-ARC, Hobart, Illinois Tool Works, Airco, Praxair, Teledyne, Deloro Stellite, Sandvik, Westinghouse, Eutectic, Miller Electric, J.W. Harris, Industrial Welding, and Airgas (collectively, the "seller Defendants"). during some or all relevant times, manufactured, sold, or distributed welding products that were supplied to Plaintiffs' work sites.

109.    Plaintiffs were exposed to welding fumes containing manganese from products sold by the seller Defendants, while using the products and/or working in the proximity of others using the products.

110.    The seller Defendants had the duty, as product sellers, to exercise reasonable care for the safety of the Plaintiffs.

111.    These duties included the responsibility for the following safety and health matters relating to welding fumes:

> A. the investigation of the health hazards;
>
> B. writing and publishing adequate and timely precautionary product labels and other health and safety information;
>
> C. writing and publishing adequate and timely specifications and standards about ventilation, safety equipment, and other precautionary measures; and/or
>
> D. Such other acts of negligence and omissions as will be shown at the trial of this matter.

112.    The Defendants knew, or in the exercise of reasonable care should have known, that welding fumes would cause neurological damage to welders and employees working in the proximity of others using the products such as Plaintiffs herein.

113.    The Defendants breached their duty of reasonable care to the Plaintiffs and were negligent, without regard to whether the acts were intentional, knowing, or reckless.

114.    Beginning in 1970, the Defendants violated OSHA standards about publication of information about health hazards through MSDS guidelines that omitted necessary instructions about target organs, ventilation, precautionary measures, and other information needed to protect against the toxic effects of manganese in welding fumes.

115.    The Defendants violated industry standards about health and safety as set forth in the Z49 documents adopted by the AWS-sponsored Z49.1 committee beginning in 1950 by failing to publish adequate and timely warning of precautionary instructions and other information to welders or persons in the proximity to welding fume about the standard.

116.    As a direct and proximate result of the Defendants' negligent acts and omissions, Plaintiffs have suffered, and continues to suffer, severe neurological injuries which require the medical monitoring of Plaintiffs, and Plaintiffs' spouses suffered damages for loss of consortium.

117.    WHEREFORE, the Plaintiff demands judgment in an amount deemed just and reasonable plus interest and costs against the Defendants.

## THIRD CLAIM FOR RELIEF
### (Strict Liability – Sale of Unreasonably Dangerous Product)

118.    Plaintiff and the putative class realleges paragraphs 1-117 as if fully set forth herein.

119.    The seller Defendants identified above manufacture, sell, or distribute welding products that produce. or cause the production of, manganese-containing welding fumes, that the products were expected to and did reach various locations in various States without substantial change in the condition in which they were sold.

120.    Plaintiffs were exposed to welding fumes containing manganese from products sold by the seller Defendants, while using the products or working in the proximity of others using the products.

121.    The seller Defendants' products are unreasonably dangerous because, when used for their reasonably foreseeable and intended purposes in the welding process, they produce harmful fumes that cause neurological injuries.

122.    The seller Defendants' products are defective because:

        A. adequate and timely warnings were not provided to users that the products produce harmful fumes;

        B. adequate and timely instructions were not provided to users about ventilation, safety equipment, or other precautionary measures;

        C. the Defendants failed to test or investigate the health hazards associated with the products;

       D.  the design of the products does not protect the user from exposure to the harmful fumes; and/or

       E.  such other acts of negligence and omissions as will be shown at the trial of this matter.

123.    The defects in the seller Defendants' products existed when the products left the Defendants' control.

124.    The defects in the seller Defendants' products were the proximate cause of the Plaintiffs' injuries and damages.

125.    At all relevant times, the Plaintiffs had no knowledge of the defects in the seller Defendants' products.

126.    WHEREFORE, the Plaintiff demands judgment in an amount deemed just and reasonable plus interest and costs against the Defendants.

## DAMAGES

127.    As a proximate result of all the Defendants' breaches of their duties to the Plaintiffs, Plaintiffs have sustained, and will sustain, welding fume-related injuries, conditions, and damages, including past and future pain and suffering; past and future medical treatment and medical expenses; past and future rehabilitation, life care expenses, and medical monitoring; past lost wages and future disability; past and future impairment of earning capacity; a diminution in his quality and enjoyment of life; and emotional distress.

## MEDICAL MONITORING

128.    Complainants and those similarly situated live in an ever-present fear that as a result of the exposure they will suffer adverse health consequences and/or disabling or terminal diseases in the future.

129.    All of the above considerations caused considerable fear, anguish, discomfort and inconvenience of complainants and those similarly situated, as well as injuries which required or require medical treatment and physical, mental and emotional damage. Consequently, Plaintiffs are entitled to medical monitoring at the expense of the defendants.

130.    The medical monitoring to which Plaintiffs are entitled include, but are not limited to, preventative screening, neurological and other testing, neurologists' and other physicians' evaluations, examinations and care and treatment of the resultant medical conditions.

131.    Plaintiffs' spouses and other spouses whom they represent have suffered, and will continue to suffer loss of consortium for the substantial interference in their relationship with the injured spouses, including loss of the aid, comfort, companionship, society, and services of the injured spouse.

132.    The claim of some of the plaintiffs herein is equal to $75,000.00 (Seventy Five Thousand Dollars) and the claim of some of the plaintiffs herein exceeds $75,000.00 (Seventy-Five Thousand Dollars).

133.    Plaintiffs herein rely solely and exclusively on state laws, and do not rely on nor invoke federal causes of action, federal law or regulation, nor federal questions in seeking their remedies.

## FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty)

134.    Plaintiff and the putative class realleges paragraphs 1-133 as if fully set forth herein.

135.    Defendants expressly warranted that its products were safe for its intended use. Its products did not conform to these express representations, including, but not limited to, the representation that it was safe or as otherwise set forth in this complaint and/or in the Defendants' product materials. As previously alleged, notice has been presented to the Defendants. This breach of express warranty claim is asserted under Massachusetts General Laws Chapter 106, including, but not limited to 2-314 (implied warranty of merchantability usage of trade) and 2-315 (implied warranty for fitness of a particular purpose and 2-318 (with regard to the lack of privity any of the Defendants may claim), 15 U.S.C. §2310(d)(1), or alternatively, to any extent that the Magunson-Moss Act is found inapplicable, under UCC §2-314(2)(c).

136.    WHEREFORE, as a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs demand judgment against the Defendants determined to be allowed under the law by this Court in an amount sufficient to establish the jurisdiction of the Superior Court plus interest and costs and whatever further relief this Honorable Court deems appropriate.

## FIFTH CLAIM FOR RELIEF
### (Breach of Implied Warranty vs. Manufacturers)

137.    Plaintiff and the putative class realleges paragraphs 1-136 as if fully set forth herein.

138.    At all times material hereto, the Defendants marketed, sold and distributed its welding products and knew and promoted the use for which the aforesaid welding products were being used by Plaintiff and similarly situated members of the class and impliedly warranted to them that the aforesaid welding products were of merchantable quality and safe for their intended use.

139.    Plaintiff and similarly situated members of the class reasonably relied on the skill, expertise and judgment of the Defendants and their representations as to the fact that the welding products were safe for its intended use and of merchantable quality.

140.    The welding products supplied by the Defendants were neither safe for the intended use nor of merchantable quality, as warranted by these Defendants in that they had dangerous and life threatening side effects.

141.    The Defendants have received notice of the breach through this complaint and/or through previous demands which constitute notice under Massachusetts General Laws Chapter 106, including, but not limited to 2-314 (implied warranty of merchantability usage of trade) and 2-315 (implied warranty for fitness of a particular purpose and 2-318 (with regard to the lack of privity any of the Defendants may claim), 15 U.S.C. §2310(d)(1), or alternatively, to any extent that the Magunson-Moss Act is found inapplicable, under UCC §2-314(2)(c).

142.    The Defendants breached their implied warranty of merchantability in that the welding products were defective and not fit for the ordinary purpose it is used.

143.    As a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs and the class have incurred, and will continue to incur, expenses for: medical testing; health monitoring; biomedical care; behavioral, cognitive, linguistic and social therapies; diet modification; special educational programs; vocational training; and in severe cases, life-long institutional care or assisted living.

WHEREFORE, as a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs demand judgment against the Defendants for demand and/or for loss of consortium and as otherwise determined to be allowed under the law by this Court in an amount sufficient to establish the jurisdiction of the Superior Court plus interest and costs and whatever further relief this Honorable Court deems appropriate.

## SIXTH CLAIM FOR RELIEF
### (Negligence and Failure to Warn Against Manufacturer Defendants)

144.    Plaintiff and the putative class realleges paragraphs 1-143 as if fully set forth herein.

145.    The welding products defendants are manufacturers and/or sellers of welding products. They made these products and sold it to the distributor defendants, for the purpose of resale for ultimate use by welders.

146.    Despite the fact that they knew, or should have known, that the welding products would emit harmful toxic gases that cause neurological injury and that have cumulative affect they never warned of the health risks posed.

147.    By not providing these essential warnings, the defendant's failed to exercise ordinary care in the manufacture, promotion, distribution, and sale into interstate commerce of welding products.

148.    The Defendants were negligent in one or more of the following particulars:

> A. Failing to use ordinary care in designing, manufacturing, sale and/or limits on recommended use and/or intended purposes welding product to avoid toxic levels of gases;
>
> B. Failing to conduct adequate testing and post-marketing surveillance to determine the safety and side effects of the welding products;
>
> C. Failing to adequately test and/or warn about the welding gases' serious side effects, potential risks, or the nature, scope, severity, and duration of its hazards;
>
> D. Failing to timely inform the medical community and the public of new information as they became aware of it regarding the welding gases' potential risks, or of the nature, extent, scope, severity and duration of its serious side effects;
>
> E. Promoting the safety of the welding products while failing to provide adequate warnings or disclose the full extent of the

33

known risks of the welding gases, of which they knew or should
have known; and

F.  Delaying warnings of, and then failing to provide adequate
warnings about, the risks of welding gases, which would have
dissuaded plaintiff and similarly situated members of the class
from using its products.

149.    Although Defendants knew or should have known that their welding
product caused unreasonably dangerous gases, they manufactured and sold it
without warning.  At all times there were safer alternatives and safer choices.

150.    Plaintiff's harm and loss of consortium was a reasonably foreseeable
consequence of the defendant's negligence.

151.    Further, as a proximate cause and legal result of Defendants'
wrongful conduct, Plaintiffs (and the class if deemed just and reasonable) have
incurred, and will continue to incur, expenses for:  medical testing; health
monitoring; biomedical care;  behavioral, cognitive, linguistic and social therapies;
diet modification; special educational programs; vocational training; and in severe
cases, life-long institutional care or assisted living.

152.    WHEREFORE, as a proximate cause and legal result of Defendants'
wrongful conduct, Plaintiffs demand judgment against the Defendants for loss of
consortium and as otherwise determined to be allowed under the law by this Court
in an amount sufficient to establish the jurisdiction of the Superior Court plus
interest and costs and whatever further relief this Honorable Court deems
appropriate.

## SEVENTH CLAIM FOR RELIEF
### (Common Law Fraud Against Maker Defendants)

153.    Plaintiff and the putative class realleges paragraphs 1-152 as if fully set forth herein.

154.    Through fraudulent omissions, the Defendants falsely portrayed to Plaintiffs that they were providing products that were safe and effective, and that the benefits of substantially outweighed their risks.

155.    These Defendants concealed from and omitted from disclosure to Plaintiffs facts they knew about the toxic gases produced by the products during ordinary use.  In the alternative, they knew that ordinary use produced toxic gases and rendered their product unsafe and dangerous, and that as a consequence their risks outweighed their benefits.  Plaintiff's were also deprived the option of making this decision for themselves.

156.    The Defendants knew that the gases were dangerous and therefore were not effective for their purpose as they had represented.  The welding products posed far greater risks than they disclosed, and were otherwise not fit for their intended purpose or as they had represented them.

157.    The Defendants were under a duty to disclose information to Plaintiff, the class, and the public at large, under the common law as well as laws requiring them not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint.

158.    Defendants made false representations and misleading partial disclosures concerning the nature and quality of their product, which they had a

duty and have a continuing duty to correct. They were and are in a superior position to know the true state of the facts about the dangerous and defective nature of their product and their known risks.

159.    These knowing, willful, deliberate and/or intentional omissions or misrepresentations of material facts include, but are not limited to (in addition to what has been referred to within this complaint) the following:

A. Suppressing, failing to disclose and mischaracterizing the known risks;

B. Omitting material information;

C. Failing to timely and fully disclose the actual results of tests and studies;

D. Failing to issue adequate warnings which would disclose the nature and extent of the dangers concerning the risks and dangers;

E. Failing to disclose that adequate and/or standard and/or generally accepted standards for testing had not been done;

F. Failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

G. Making the representations concerning the safety, efficacy and benefits without fully and adequately disclosing the underlying facts, which rendered such statements false and misleading.

160.    Plaintiffs did not know, and in the exercise of reasonable care, could not have discovered, the material facts and important information that the Defendants omitted and suppressed.

161.    As a result of the Defendants' fraud, suppression and omission of material facts, Plaintiffs acted to their detriment, which they would not have done had they been told the truth.

162.    WHEREFORE, as a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs demand judgment against the Defendants plus interest and costs and whatever further relief this Honorable Court deems appropriate.

## EIGHTH CLAIM FOR RELIEF
### (Products Liability)
### (Defective Design Against Defendant Manufacturers, and Distributors)

163.    Plaintiff and the putative class realleges paragraphs 1-162 as if fully set forth herein.

164.    The welding products were defective in design and/or formulation. When they left the Defendants' hands, they had foreseeable risks that exceeded the benefits associated with its design or formulation.

165.    Alternatively, the welding products manufactured and distributed were defective in design or formulation. When it left Defendants' hands, it was unreasonably dangerous and/or was more dangerous than an ordinary consumer would expect, and/or was dangerous.

166.    As a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs suffered a related loss.

167.    WHEREFORE, as a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs demand judgment against the Defendants as determined to be allowed under the law by this Court plus interest and costs and whatever further relief this Honorable Court deems appropriate.

## NINTH CLAIM FOR RELIEF
### (Punitive Damages Including Attorneys Fees and Expenses for Violation of 93A and 85J or Other State Law)

168.    Plaintiff and the putative class realleges paragraphs 1-167 as if fully set forth herein.

169.    The Defendant breached their implied and expressed warranties and their goods were not reasonably suitable for the ordinary use for which goods of their description were sold when used in accordance with adequate warnings and instructions. *Casagrande v. F. W. Woolworth Co.* (1960) 165 N.E.2d 109, 340 Mass. 552.

170.    In addition to what has already been set forth, the Defendants, unfairly, deceptively and in reckless disregard for the safety, health and welfare of the Plaintiff, sold welding products and continued to market and sell the welding products, and understated the harmful affects even when they knew or should have reasonably known that their products were causing injury and/or could cause future harmful health conditions to develop.

171.    The acts and omission of the Defendants, and each one individually, were so gross as to evidence a willful, unfair, deceptive, wanton and reckless disregard for the health and welfare of the Plaintiffs and all those similarly situated, and constitutes outrageous conduct.

172.    Consequently, the Plaintiffs are entitled to recovery of punitive damages in an amount sufficient to punish them for their egregious acts and to deter them from such conduct in the future.

173.    The inherent defects of these welding products were latent and self-concealing.

174.    Each of the unfair, deceptive, willful, wanton, negligent and grossly negligent acts of omission and commission of the Defendants, as set forth hereinabove, were a proximate cause of the injuries and damages suffered by the Plaintiffs.

175.    The injuries and damages include, but are not limited to the costs associated with the need to seek medical attention and to undergo diagnostic procedures for which they have incurred expenses and will incur expenses in the future and all other damages for loss allowed under the law.

176.    The conduct of the Defendants was otherwise unfair and deceptive and violative of 93A AND 231 85J.

177.    Defendants have acted in bad faith in the transactions described herein and the wrongful acts alleged demonstrate bad faith as defined under Massachusetts law with respect to the torts engaged in.

178.    Accordingly and as otherwise set forth in this complaint, Plaintiffs are entitled to recover reasonable attorney's fees and expenses of litigation in an amount to be proven at trial.

179.    WHEREFORE, as a proximate cause and legal result of Defendants' wrongful conduct, Plaintiffs demand judgment against the Defendants as

determined to be allowed under the law by this Court plus interest and costs and whatever further relief this Honorable Court deems appropriate.

180. This action is appropriate for determination through the Class Action Procedure for the following reasons:

A. The large number of potential claimants present a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;

B. The common issues of law and fact pertaining to the determination of fault and the liability for compensatory and exemplary damages predominate over the individual issue of quantum, and such issues are typical of similar claims;

C. The determination of fault and the basis for assessment of compensatory and exemplary damage may be made in the class action without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary;

D. Petitioners herein have sustained damages of the nature described hereinabove and are suitable representatives of the class;

E. The Plaintiffs herein are represented by skilled attorneys who are experienced in handling mass torts and class actions, and who can be expected to handle this matter in an expeditious and economical matter to the best interests of the class membership;

F.   The class action procedure is the superior vehicle for the efficient disposition of the issues and claims herein presented.

WHEREFORE, Plaintiffs pray:

1.   That this action be certified as a class action, as alleged above, for the purposes of determining the common issue of liability for appropriate damages;

2.   That upon certification of the class action, the Court calls for the formulation of a suitable management plan;

3.   That after due proceedings had, and a trial by jury, there be judgment herein in favor of Plaintiffs and against defendants, for all damages which are reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings;

4.   That the rights of the Plaintiffs and the members of the class to establish their entitlement to compensatory damages, and the amounts thereof, be reserved for determination in their individual actions when appropriate; and

5.   That Plaintiffs recover their costs for the prosecution of this class action.

THE PLAINTIFFS DEMAND A TRIAL BY JURY.

TONINO ACETO
By his Attorney

Robert J. Bonsignore, Esq.
BBO No. 547880
BONSIGNORE & BREWER
23 Forest Street
Medford, MA  02155
(781) 391-9400

Dated:     11/5/04

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

............................., ss
[seal]

No.

MIDDLESEX

TONINO ACETO
V.
LINCOLN ELECTRIC COMPANY
HOBART BROTHERS COMPANY,
ILLINOIS TOOL WORKS,
THE ESAB GOUP INC., ET AL.

, Plaintiff(s)

04-4434

........................................ , Defendant(s)

The ESAB Group, Inc.
The Corporation Trust Company
The Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

**SUMMONS**

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon .................................................

............................................ plaintiff's attorney, whose address is .......................................

..............................................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ...................................

Cambridge......................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Robert A. Mulligan, Esquire, at ............................................................................

the .................................................. day of ............................................................

...................., in the year of our Lord .......................................... .

Edward J Sullivan
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

................ MIDDLESEX ................ , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

TONINO ACETO
V.
LINCOLN ELECTRIC COMPANY
HOBART BROTHERS COMPANY,
ILLINOIS TOOL WORKS,
THE ESAB GOUP INC., ET AL.

, Plaintiff(s)

04-1134

..................................... , Defendant(s)

Hobart Brothers Company
C.T. Corporation System
2 Oliver Street
Boston, MA 02109

## SUMMONS

To the above-named Defendant:

    You are hereby summoned and required to serve upon ..................................

.............................................. plaintiff's attorney, whose address is ..........................................

......................................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ..................................

*Cambridge* .......................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

    Witness, Robert A. Mulligan, Esquire, at ...............................................................................

the ............................................... day of ...............................................................

...................., in the year of our Lord ......................................... .

*Edward J Sullivan*

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET# **MICV2004-04434-H**

RE:    **Aceto v Lincoln Electric Company et al**

TO: Robert Bonsignore, Esquire
23 Forest Street
Medford, MA 02155

### TRACKING ORDER - A TRACK

You are hereby notified that this case is on the average (A) track as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/03/2005 |
| Response to the complaint filed (also see MRCP 12) | 04/04/2005 |
| All motions under MRCP 12, 19, and 20 filed | 04/04/2005 |
| All motions under MRCP 15 filed | 01/29/2006 |
| All discovery requests and depositions completed | 12/25/2006 |
| All motions under MRCP 56 served and heard | 02/23/2007 |
| Final pre-trial conference held and firm trial date set | 06/23/2007 |
| Case disposed | 11/05/2007 |

The final pre-trial deadline is **not the scheduled date of the conference.** You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **H** sitting **in Rm 8A (Cambridge), Middlesex Superior Court.**

Dated: 11/08/2004

Edward J. Sullivan
Clerk of the Courts

BY: Mark Toomey
Assistant Clerk

Location: Rm 8A (Cambridge)
Telephone: 617-494-4010 EXT 4261

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130**

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, SS**

**CIVIL ACTION NO.**  04-4434

> FILED
> IN THE OFFICE OF THE
> CLERK OF THE COURTS
> FOR THE ... MIDDLESEX
> **NOV 05 2004**
> Edward J Sullivan
> CLERK

**TONINO ACETO**

**v.**

**LINCOLN ELECTRIC COMPANY, HOBART** :
**BROTHERS COMPANY, ILLINOIS TOOL** :
**WORKS, THE ESAB GROUP, INC. et al** :

## MOTION TO APPOINT SPECIAL PROCESS SERVER

Now comes the Plaintiff in the above-entitled matter and moves this court appoint

Darlene Mahoney of Medford, Massachusetts as special process server. Plaintiff states that

Darlene Mahoney is a disinterested person and has no interest in the case.

Dated this __7__ day of November 2004.

Plaintiff,
By his attorney,

Robert J. Bonsignore
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155-3820
Phone: (781) 391-9494
BBO# 547880

_November 5, 2004_
(date)
_Murphy_, J. Motion
_allowed_    _denied_
Attest: _Anne M. Cherubino_
_Deputy_

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Tonino Aceto

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm, Name, Address, and Telephone Number)

Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street, Medford, MA 02155
781-391-9400

## DEFENDANTS

Lincoln Electric Company, et al.

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

Attorneys (If Known)

Wm. Shaw McDermott, Esq.
Gregory R. Youman, Esq.
Ashley Aline Handwerk, Esq.
Kirkpatrick & Lockhart LLP
75 State Street, Boston, MA 02109    617-261-3100

*2740 DPW*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Plaintiff
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                and One box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated or Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury Med. Malpractice<br>☒ 365 Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY**<br>☐ 210 Land Condemnations<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer w/Disabilities Employment<br>☐ 445 Amer w/Disabilities Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 S SID Title XVI<br>**FEDERAL TAXSUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS   Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopend
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing. **Do not cite jurisdictional statutes unless diversity.**)

28 U.S.C. § 1441(a)

Brief description of cause:
Removal of state case to Federal of state case to Federal Court

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ greater than $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE:                          DOCKET NUMBER

DATE   12/30/04

SIGNATURE OF ATTORNEY OF RECORD
*Wm. Shaw McDermott*

BOS-714679 v1 0950000-0102

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## Attachment to Civil Cover Sheet Filed in Connection With

## Aceto v. Lincoln Electric Company, et al.

Additional Attorneys for the Defendants:

Alan W. Brothers, Esq.
Brothers & Thompson, P.C.
100 West Monroe Street, Suite 1700
Chicago, IL 60603
Attorney for Defendants Illinois Tool Works, Inc.
        and Miller Electric Manufacturing, Co.

Brian P. Voke, Esq.
Anthony Sbarra, Esq.
Campbell, Campbell, Edwards & Conroy, P.C.
One Constitution Center, Third Floor
Boston, MA 02129
Attorney for Defendant Select-Arc, Inc.

Michael B. DeSanctis, Esq.
David A. Handzo, Esq.
Jenner & Block
601 Thirteenth Street, NW
12th Floor
Washington, DC 20005
Attorney for Defendant the National Electric
        Manufacturers Association

Katharine Latimer, Esq.
Bonnie J. Semilof, Esq.
Rebecca A. Womeldorf, Esq.
Spriggs & Hollingsworth
1350 I Street, NW, Suite 900
Washington, DC 20005
Attorney for Defendant General Electric Co.

Daniel Bukovac, Esq.
Leonard J. Johnson, Esq.
Stinson Morrison Hecker LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Attorney for Defendant Deloro Stellite Co., Inc.

2

Richard P. Campbell, Esq.
Kurt B. Gerstner, Esq.
Campbell, Campbell, Edwards & Conroy, P.C.
One Constitution Center, Third Floor
Boston, MA 02129
Attorney for Defendant Caterpillar, Inc.

John J. Haggerty, Esq.
Ulmer & Berne, LLP
1300 East Ninth Street, Suite 900
Cleveland, OH 44114
Attorney for J.W. Harris, Co., Inc.

David M. Ott, Esq.
Bryan Nelson Randolph
6524 U.S. Highway 98
P.O. Drawer 18109
Hattiesburg, MS 39404-8109
Attorney for Defendant Industrial Welding Supplies of Hattiesburg, Inc.

Todd R. Eskelsen, Esq.
Sonnenschein, Nath & Rosenthal
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005
Attorney for Defendant Ferroalloys Association

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)    Tonino Aceto v. Lincoln Electric Company, et al.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

_X_  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

___  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (see local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    n/a

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES [ ]    NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                    YES [ ]    NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                    YES [ ]    NO [X]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES [ ]    NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                    YES [ ]    NO [X]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [X]        Central Division [ ]        Western Division [ ]

8.  If filing a Notice of Removal – are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                    YES [ ]    NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    Wm. Shaw McDermott, Esq.

ADDRESS    Kirkpatrick & Lockhart Nicholson Graham, 75 State Street, Boston, MA  02109

TELEPHONE NO.    617-261-3100

(BOS-714689-V1-CATEGORY_SHEET_-_ACETO.DOC - 11/27/00)